David Wayne POKE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–86.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1973.

W. Michael Hackett, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Kay Karen Kennedy, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, David Wayne Poke, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–72–1884, for the offense of Grand Larceny, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1701. He was sentenced to serve a term of ten (10) years in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

At the trial Wilbert Harrison, Jr., testifying on behalf of the State, stated that on the morning of July 11, 1972, while on his way to work, he had stopped at the Tulsa Quick-Trip Store to buy milk and a cupcake. As he sat in his car just outside the

store eating this improvised breakfast, a girl parked a delivery truck directly beside him and carried a box into the store. He thereafter observed her return to the truck momentarily and then go back into the store. During the entire time Mr. Harrison had been parked outside the Quick-Trip, he had observed a man wearing a black hat with a bill standing on the sidewalk directly in front of Harrison's car. After the girl had entered the store for the second time, that man, having first peered through the window into the store, approached Mr. Harrison's car. Standing in the space between that car and the truck, he greeted Mr. Harrison with "What's going on, brother" or similar words. (Tr. 31) Having thus observed the social amenities, the man turned his attention to the delivery truck. Reaching inside, he withdrew a red and blue purse and tucking it under his arm, walked away, disappearing around a nearby corner. Mr. Harrison then entered the grocery store in search of the truck's driver, and finding her, related the episode he had just observed. In the course of his testimony, Mr. Harrison identified the man whom he had seen take the purse as the defendant.

Maria Jane Riddle testified that on July 11, 1972, at approximately 7:30 a. m. she arrived, as she did regularly each morning, at the Quick-Trip Store at 720 North Main Street, the first stop on her delivery route. She stated that she parked her truck outside the store and carried a box of sandwiches inside. Once inside, she discovered that she had no pen and returned to her truck for money to buy one. At the truck, she took her purse from under the front seat, got the money she needed from an envelope inside the purse and returned to the store, leaving her purse on the seat of the truck covered with a sweater. As she walked back toward the store, she noticed a man standing on the sidewalk. She stated that after Mr. Harrison told her that her purse had been taken, she ran out of the store, greatly upset because the purse contained $250. Once outside, she asked which way the man had gone and was told

that he went toward the alley. Meanwhile, the attendant from the Quick-Trip Store had offered the services of his motorcycle. Mrs. Riddle climbed on the motorcycle behind him and the two set off in pursuit of her purse, leaving Mr. Harrison behind to await the arrival of the police. As she rode along, Mrs. Riddle saw a man standing in an alley rummaging through her purse. She described him as a black man, slender, of less than medium height, wearing a black hat and a blue shirt. When he saw the motorcycle coming toward him, he dropped the purse and escaped between the buildings before Mrs. Riddle was close enough to see his face. She testified that the purse that she found laying in the alley where she had seen the man drop it was her own and that the envelope containing the money was gone from it.

Carl Wayne Westfall, the Quick-Trip attendant, testified to his part in the motorcycle chase. He stated that he had seen the man in the alley holding the purse and had observed that he was wearing a black hat, a blue shirt, and blue jeans, but had not gotten close enough to see the man's face.

Fred Parks, a Tulsa Police Officer, testified that during the course of his investigation of the larceny of Mrs. Riddle's purse, he had twice contacted Wilbert Harrison for the purpose of obtaining a complete description of the thief. The second time Mr. Harrison talked to the officer, on July 27, 1973, he told him that he had subsequently seen the man who had taken the purse sitting on the porch of an apartment house at a specified Tulsa address. On the basis of that information, Officer Parks went to the address given and placed the defendant under arrest.

Following the testimony of Officer Parks, the State rested its case.

For the defense, the defendant's mother, Mrs. Henrietta Poke, testified that on July 11, 1972, her son was staying at her house. She stated that she arose at approximately 8:15 that morning and that she remem-

bered seeing her son, the defendant, asleep on the studio couch.

Following the testimony of Mrs. Poke, the defense rested.

In the second stage of the trial the State offered into evidence the second page of the Information, the Judgment and Sentence of the defendant's prior conviction of a felony for the crime of Larceny of Merchandise from a Retailer. That document was admitted into evidence upon the stipulation of the defense that the allegations contained therein are true and correct and to the identity of the defendant.

In his first proposition the defendant attempts to once more raise for this Court's consideration the issue of the effect of Lamb v. Brown, 456 F.2d 18 (10th Cir. 1972) in a collateral attack upon a conviction which became a final judgment prior to the date of that decision. It is his contention that the trial court erred in the second stage of his trial by permitting the introduction into evidence of his sole prior conviction because that conviction was sustained when he was seventeen years of age.

The Tenth Circuit in Lamb v. Brown specifically held that its ruling which condemned Oklahoma's statutory scheme allowing females under the age of eighteen years the benefits of juvenile court treatment while limiting those same benefits to males under sixteen years of age, was not to apply retroactively.

■ It is clear that the Federal constitution does not compel in every case the retroactivity of a "new" constitutional ruling such as that announced in Lamb v. Brown. See Linkletter v. Walker, 381 U. S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Rather, the extent of the retrospective effect of such a law-making opinion is to be determined by a balancing process which considers: (a) the purpose to be served by the new standards; (b) the expense of justifiable reliance by law enforcement authorities upon the old standards; and, (c) the effect on the administration of justice of a particular retroactive application of the new standards. See Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969).

It is apparent that the conscientious application of such a test to a tainted conviction under collateral attack might, in the proper case, dictate a different result from that reached in a case in which the attack upon a conviction is direct, for the later addition of a secondary effect of a tainted conviction such as enhanced punishment under an habitual offenders statute, might alter the balance significantly. However, this Court has previously rejected a collateral attack upon a conviction sustained by a male defendant prior to the court's decision in Lamb, supra, when he was sixteen years of age. Fields v. State, Okl.Cr., 506 P.2d 919 (1973). That holding is predicated upon this Court's decision that the ruling in Lamb, supra, has no retrospective effect. While this writer dissented to that part of the decision, it still represents the majority view.

The defendant in the instant case does not contend that this Court must now hold Lamb, supra, to be retroactive. Rather, he urges that a prospective application of Lamb, supra, encompasses any form of punishment resulting from the use of 10 O.S.1971, § 1101(a), declared violative of the Equal Protection Clause in Lamb, supra, whether such punishment is prosecution and conviction or enhancement of punishment under an habitual offenders statute. He argues that although the Tenth Circuit did not retroactively invalidate the convictions of male defendants sustained at the age of sixteen to eighteen years, it did prohibit further felony prosecution based upon a classification by sex and age, its purpose being to eradicate future discrimination in that area. The essence of his contention is that a prospective application of that decision compels a holding that the provisions of 21 O.S.1971, § 51, the Oklahoma Habitual Offender Statute, are unconstitutionally discriminatory as applied to a male defendant whose sole prior conviction became final at a time when a female of the same age, found

guilty of the same act, would have been accorded the benefits of juvenile court treatment, one of those benefits being that a disposition of a juvenile proceeding is not available for the purposes of enhancing punishment. The defendant argues that although a male defendant who was convicted of a prior felony at the age of sixteen or seventeen years has demonstrated no greater criminal proclivity than has a female defendant who committed the same act at the age of sixteen or seventeen years and was adjudged guilty in a juvenile proceeding, the male defendant is potentially subject to a far greater penalty than is the female defendant in a comparable situation. Consequently, he contends that the use of such a pre-Lamb conviction to enhance the punishment of a male defendant for a second and subsequent offense creates a disparity in the treatment of male and female second offenders and results in a present classification which is violative of the Equal Protection Clause of the Fourteenth Amendment for the same reason the original classification was struck down in *Lamb,* supra.

█ Justice Frankfurter, in his dissent to United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653, 662, wrote:

"It is true also of journeys in the law that the place you reach depends on the direction you are taking. And so, where one comes out on a case depends on where one goes in."

There is no doubt that the defendant here has gone into this case in a different place than did this Court in *Fields,* supra, and has come out with a demonstrable anomaly in the law. Some anomalies in the law are, however, inevitable and whatever the abstract merits of his argument might be in the face of this Court's holding in *Fields,* supra, they will not be discussed here for the reason that the question is not properly before this Court for consideration on appeal. A search of the record in this case reveals that the issue of the constitutionality of this application of the habitual offenders statute was never presented to the trial court, not argued, not set forth in the motion for a new trial, nor in a motion in arrest of judgment, nor specified in the petition in error, and it will not be considered when raised for the first time by presentation in the brief on appeal. Moreover, we note that the record is devoid of sworn testimony, stipulation, or a finding of fact by the trial court that the defendant was indeed seventeen at the time of the prior conviction and is insufficient for the consideration of this question for that reason.

█ In his second proposition the defendant challenges the sufficiency of the evidence to sustain the verdict of guilt and judgment of conviction. We have carefully read the evidence in this case and have concluded that the evidence was sufficient to justify the submission of the case to the jury. The weight of the evidence and the credibility of the witnesses were clearly questions for the jury, and where there is competent evidence in the record from which the jury can reasonably and properly conclude that the defendant was guilty as charged, this Court will not substitute its judgment for that of the jury. Hill v. State, Okl.Cr., 502 P.2d 1280 (1972).

The identification of the defendant by the witness Wilbert Harrison was a question of fact for the jury to determine and while the identification was made sometime after the occurrence, no doubt the jury took this into consideration along with all the other facts and circumstances presented by the evidence. Likewise, the question of defendant's alibi was presented to the jury by proper instruction and they were permitted to consider the evidence of that defense.

Defendant's third proposition asserts that the prosecutor committed reversible error during his closing argument in the second stage of defendant's bifurcated trial. This assertion of error is predicated upon prosecutor's comment to the jury that defendant's previous sentence had been suspended by the court and that he "hadn't

served a day down at the State Penitentiary, not a day." In fact, as the judgment and sentence in the prior case discloses, the defendant was sentenced to serve twelve (12) months of the eighteen (18) months sentence with the balance being suspended.

■ The prosecutor's remarks were not objected to by the defendant at trial and therefore are not properly before this Court on appeal. We reiterate once again the statement made in the second syllabus of this Court in Cummings v. State, 57 Okl.Cr. 428, 48 P.2d 879 (1935):

> "To preserve the question of alleged misconduct of the county attorney in his argument to the jury, the attention of the court should be called to the argument at the time by proper objection and a ruling had thereon and an exception to the adverse ruling reserved and the same assigned as error in the motion for new trial and the petition in error. When this is not done, the question is not presented to this court for review."

■ Finally, defendant asserts that the punishment assessed in this case is excessive. We have frequently stated that the question of whether punishment is excessive must be determined by a study of all the facts and circumstances in each case, and that this Court lacks the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. Moore v. State, Okl.Cr., 501 P.2d 529 (1972); Green v. State, Okl.Cr., 501 P.2d 219 (1972). While a sentence to a state penitentiary for a period of ten (10) years may seem a harsh penalty for a youthful offender whose crime was not a violent one, it does not exceed that provided by statute for the crime of Grand Larceny, After Former Conviction of a Felony, and nothing appears in the record from which we can reasonably conclude that the maximum sentence was assessed in this case is the result of undue prejudice or passion created in the minds of the jurors by improper conduct of the trial. We are, thus,

unable to conscientiously find upon the record of this appeal that the defendant's sentence must be modified as excessive.

Accordingly the judgment and sentence appealed from is hereby affirmed.

BLISS, P. J., concurs.

BUSSEY, J., concurs in results.