**Johnny Ray SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–742.**

Court of Criminal Appeals of Oklahoma.

May 11, 1976.

For Opinion on Petition for Rehearing
June 18, 1976.

E. Terril Corley, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Johnny Ray Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–406, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1975, § 701.2. In accordance with the provisions of 21 O.S. Supp.1975, § 701.4, the trial court fixed the defendant's punishment at fifty (50) years' imprisonment with said sentence to run concurrent with CRF–75–412 and CRF–75–436. From this judgment and sentence, the defendant has perfected a timely appeal to this Court.

In the instant appeal the defendant does not challenge the sufficiency of the evidence to support the jury's verdict and for this reason only a brief summary of the facts will be presented herein. Mary Louise Church's testimony revealed that she was the owner of the Stag Bar located on North Main Street in Tulsa, Oklahoma, and that on the 23rd day of February, 1974, she came into the bar at approximately 11:00 p. m. so she would be there at the time the establishment closed. She recalled seeing the defendant in the bar on that evening and she remembered that the defendant bought a round for the patrons who were in the bar at that time. The defendant left the bar when it closed at 1:00 a. m. and the witness, Bob Desbeins, Ellen Strakoulas, Marvin Holto and the decedent, Ben Foraker, remained inside the bar after closing. Ms.

Church recalled that approximately 10 to 15 minutes after the establishment closed there was a knock on the door and the person outside stated that he wanted to call a cab. The individual was not allowed to come into the bar but Bob Desbeins called a cab for the individual. After approximately five minutes, Ms. Church heard "terrible noises" in the form of banging and kicking on the door. Ms. Church proceeded to the door and the decedent accompanied her. After Mr. Foraker, the decedent, opened the door Ms. Church observed the defendant standing outside. Defendant raised his right arm and fired a gun in an upward direction. Thereafter, the decedent fell to the floor and the defendant entered the establishment and fire a shot insider. the bar. Ms. Church then retrieved a pool cue and began hitting the defendant on the head. The defendant turned toward her and at that time Mr. Desbeins grabbed the defendant from behind and Ms. Church was able to get the gun out of the defendant's hand. She identified various State's Exhibits as photographs depicting the bar on the evening in question.

On cross-examination Ms. Church testified that the decedent was not intoxicated, but could be described as "pleasantly tight."

Dr. Leo Lowbeer testified that he was a pathologist and that he performed the autopsy on the decedent, Ben Tom Foraker. He stated that the cause of death was a bullet perforation of both hemispheres of the brain with the entrance wound in the right corner of the left eye. He testified the decedent's body contained an amount of alcohol from which he would describe the deceased to be in an intoxicated condition. The appearance of the decedent's liver indicated him to have been a chronic user of alcohol.

Robert Desbeins testified that he was in the bar on the evening in question and that after the establishment closed the defendant knocked on the door and said that he wanted a cab. Thereafter Mr. Desbeins called a cab, but he soon heard a loud knocking and kicking on the door. Desbeins observed the decedent open the door and observed the defendant standing outside the door. The witness observed the decedent take a step outside and then a step back, whereafter the defendant raised his arm and shot the decedent. Thereafter the defendant entered the bar and fired the weapon again. Soon, however, the defendant was restrained.

Ellen Strakoulas testified that she was in the bar on the evening in question and she corroborated previous testimony that the decedent opened the outside door to the establishment and that she thereafter heard a shot. She testified that after the shot was fired she ran into the back of the establishment and called the authorities.

Jack Sherl testified that he was employed as a police officer for the City of Tulsa and was so employed on February 23, 1975. He testified that on that date he responded to a call from the Stag Bar and after a short investigation he arrested the defendant. A search of the defendant revealed a box of .22 shells which contained 43 live rounds and he identified State's Exhibit No. 11 as being a weapon similar to the one which he had observed in the bar on that evening. He further stated that upon searching the defendant's billfold he did not find any money.

Max Sharp testified that he was an investigator for the Tulsa Police Department and on the evening in question he investigated the shooting at the Stag Bar. He then identified State's Exhibit No. 14 as being a .22 caliber slug recovered from outside the door of the bar. The State then rested.

The defendant then took the stand and testified in his own behalf and stated that he had arrived at the Stag Bar shortly after 11:00 p. m. on the 23rd of February. He testified that he had remained there until closing and that he was then asked to go outside to wait for the cab which he had requested. He stated that he waited for approximately ten minutes and that he then knocked on the door. An individual from within the bar informed him a cab had

been called. He stated that after waiting for approximately five more minutes he knocked on the door again. When the door opened, the decedent came to the door and asked the defendant, "What the hell do you want?" He testified that the decedent asked him how much money he had on him and he replied, "A little over $300.00." Thereafter, the decedent brandished a pool cue and attempted to hit the defendant at which time the defendant pulled the gun out of his pocket, crouched and fired. The defendant said he was hit on the left side of the head with the pool cue. The defendant also testified that the decedent threatened to beat his "brains out" and the defendant said that he was in fear of bodily harm from the decedent. The defendant testified he was only five foot, eight inches tall and the decedent appeared to be much bigger. The defendant further stated that earlier in the evening he had pulled out the money he had, which consisted of about $300.00. The defendant testified that he had seven former felony convictions. The defendant testified that from the time he was struck with the pool cue until the time the police arrived he had a lapse of memory.

The defendant's first assignment of error asserts that the trial court committed reversible error in coercing the jurors into deciding the defendant's guilt. In support thereof the defendant alludes to the colloquy between the court and the foreman of the jury which is reflected in the trial transcript as follows:

"THE COURT: Ladies and gentlemen of the jury, it is getting late, and at this time the Court would like to make inquiry of the jury since you have been out since approximately 2:15, which is four hours. I would like to make inquiry if there is prospects of reaching a verdict in the near future. Your foreman may answer.

"THE FOREMAN: Your Honor, I am not sure how long we might have to go before we reach a verdict. I don't know what the procedure is or what is proper with relation to a deadlock.

"THE COURT: Don't tell me what the vote is or anything like that, but at this time now I would like to inquire as to at the last poll—without telling me which way for guilty or innocence—what was the numerical standing of the vote so that I would know how the jury stood in that regard.

"THE FOREMAN: At the last polling?

"THE COURT: Yes.

"THE FOREMAN: Eleven to one.

"THE COURT: Then, it would appear that you are nearing a verdict; is that correct?

"THE FOREMAN: Partially, sir. It has been at that point for some time.

"THE COURT: Let me give you then another fifteen minutes and then I would need to know, because in the event that you do not reach a verdict soon, we will have to make arrangements for lodging the jury. We cannot allow the jury to separate and it may be necessary for me to give one additional instruction. I would hope that you are able to make an agreement. In recognizing, of course, that without knowing which way you stand, that those in the minority recognize that rationale as approached by the majority.

"At this time I will remand the jury back for fifteen more minutes of deliberation and if at that time you have not reached a verdict, then the Court will make arrangements for sequestering the jurors. Now, I would anticipate that you would not be kept together more than three or four days, but you will not be able to separate from this time forward.

"I hope you will conduct your duties as responsible, mature ladies and gentlemen. You may now adjourn to continue your deliberations.

"(The following procedures were held out of the presence of the jury.)

"The Court will give an exception to the statements of the Court to any parties, agreed?

"MR. GANEM: Please note our exception.

"THE COURT: Allowed.

"Counsel for the State?

"MR. SHAFFER: Agreed." (Tr. 280–282)

The defendant argues that these remarks of the trial court to the jury tended to coerce the jury in returning a verdict and that such a practice has been condemned by this Court in *Baker v. State,* Okl.Cr., 432 P.2d 935 (1967). Also see, *Spomer v. State,* Okl.Cr., 395 P.2d 657 (1964).

■ The trial judge is within his rights in making inquiry of the jury so that he might exercise his discretion in requiring additional deliberation or discharge of the jury. See, 22 O.S.1971, § 894 and *Reed v. State,* Okl.Cr., 335 P.2d 932 (1959). In the first paragraph of the Syllabus of *Reed v. State,* supra, the Court stated:

"It is not improper for trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is reasonable probability of reaching a verdict and to inquire of the likelihood of them so doing. However, the court must exercise great caution to say nothing tending to coerce an agreement, to indicate his feelings in the case, or to invade the province of the jury."

Also see, *Calhoun v. State,* Okl.Cr., 406 P.2d 701 (1965), and *Baker v. State,* supra. Also, in a lengthy discourse on the subject matter this Court, in *Spomer v. State,* supra, stated in the first, second and third paragraphs of the Syllabus that:

"The practice of the trial judge calling a jury in and lecturing them after they have failed to agree upon a verdict is condemned by this Court and if improper remarks are made that may tend to coerce the jury in arriving at a verdict, the case should be reversed.

"Not every improper remark justifies reversal, but if said remarks are such that cause the doubt as to whether defendant was prejudiced by said remarks, that

doubt should be resolved in favor of the defendant.

"Since jurors are prone to place much credence upon remarks of trial judge, and his position merits said respect, he should refrain from making remarks that might be interpreted as coercion upon the jury." at 658

In *Wishard v. State,* 5 Okl.Cr. 610, 115 P. 796 (1911), this Court in dictum stated:

"The length of time during which a jury should be required to consider a case is within the sound discretion of the trial court, and this court will not interfere with the exercise thereof, unless manifestly abused. It is impossible to state any rule by which to determine what language by the court is sufficiently coercive to invalidate a verdict. This depends upon the circumstances of each case. . .

"It is the duty of the court to detain the jury until satisfied that failure to agree springs from that cause, and that alone. It must then be left to the sound discretion of the trial judge to determine how long the jury shall be detained, and what, if anything, shall be said as to the probable length of the detention. Unless this judicial discretion is abused, the verdict should stand." at 809

■ Under the particular circumstances of this case, we conclude that the remarks of the trial court to the jury of which the defendant now complains were not sufficiently coercive to invalidate the verdict, but we are constrained to observe that the remarks of the trial court are not to be commended. For all the above and foregoing reasons we reject the defendant's first assignment of error.

■ The defendant's second assignment of error asserts that the prosecuting attorney in his closing argument to the jury made various remarks which were prejudicial to the defendant. The first remark of the prosecutor of which the defendant now complains was not objected to at trial and is, thus, improperly preserved for review.

See, *Poke v. State,* Okl.Cr., 515 P.2d 252 (1973), and *Haywood v. State,* Okl.Cr., 509 P.2d 173 (1973).

 We have also carefully examined the closing argument of the prosecutor in the instant case and although the argument is not a model for emulation we do not find that the defendant was manifestly prejudiced by the argument. See, *Atkins v. State,* 91 Okl.Cr. 47, 215 P.2d 569 (1950), *Battle v. State,* Okl.Cr., 478 P.2d 1005 (1970), and *Glover v. State,* Okl.Cr., 524 P.2d 51 (1974). Therefore, we find this assignment of error to be without merit.

 In his third assignment of error, defendant asserts the accumulation of errors and irregularities in the trial, when considered as a whole, deprived the defendant of a fair and impartial trial. See, *Lovell v. State,* Okl.Cr., 455 P.2d 735 (1969). However, in *Haney v. State,* Okl.Cr., 503 P.2d 909 (1972), the appellant contended that his first three propositions of error, considered collectively, would support the proposition that the case should be reversed. In *Haney v. State,* supra, if the previous propositions of error were without merit, it follows that the last proposition which asks that the previous propositions be considered collectively would also be without merit. In the instant case in light of this Court's disposition of the defendant's first two assignments of error, it follows that the third assignment of error is similarly without merit.

 The defendant's final assignment of error asserts that the sentence is excessive and contrary to law. The docket sheet in the instant case reflects that the trial court sentenced the defendant to an indeterminate sentence of twenty (20) years to Life imprisonment in accordance with 21 O.S.Supp.1975, § 701.4. However, the judgment and sentence in the instant case reflects that the trial court sentenced the defendant to fifty (50) years' imprisonment with said sentence to run concurrently with CRF–75–412 and CRF–75–436.

Title 21 O.S.Supp.1975, § 701.4, states:

"Every person convicted of murder in the second degree shall be punished by imprisonment in the State Penitentiary for not less than 10 (10) years nor more than life. The trial court shall set an indeterminate sentence in accordance with this section upon a finding of guilty by the jury of murder in the second degree."

The sentence in the instant case does not comport with the provisions of § 701.4. This Court has the power to reverse, affirm or modify a judgment appealed from, and may, if necessary or proper, order a new trial. See, 22 O.S.1971, § 1066. Thus, this Court would have the power to modify the judgment and sentence in the instant case, but the Court would not have any authority to add to the sentence imposed.

We have no alternative, therefore, other than to REMAND the cause with instructions to the trial court to resentence the defendant in conformity with the provisions of 21 O.S.Supp.1975, § 701.4. See, *Dunbar v. State,* 15 Okl.Cr. 513, 178 P. 699 (1919).

For the reasons herein stated, the cause is REMANDED to the District Court, Tulsa County, with instructions to the trial court to resentence the defendant on the verdict of the jury returned in this case, in accordance with the provisions of 21 O.S. Supp.1975, § 701.4. In all other respects the judgment and sentence appealed is, accordingly, *AFFIRMED.*

BRETT, P. J., and BUSSEY, J., concur.