Hiawatha COOK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–696.

Court of Criminal Appeals of Oklahoma.

Dec. 1, 1976.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Hiawatha Cook, hereinafter referred to as the defendant, was charged in the District Court, Oklahoma County, Case No. CRF–75–3392, for the offense of Second Degree Murder, in violation of 21 O.S.Supp.1973, § 702.1. The defendant was represented by counsel and tried before a jury, and convicted of the aforementioned crime. His punishment was fixed from ten (10) years to life imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

In that appeal, the Public Defender has filed application for leave to withdraw as counsel, reporting that no more than frivolous matter could be presented on appeal. In addition, the defense counsel has, in an attempt to comply with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), filed a memorandum brief, the purpose of which is to point out any error which may serve as a basis for reversal on appeal.

The first witness for the State was Dennis Lee Asper, patrolman for the Oklahoma City Police Department. He testified that on September 3, 1975, at approximately 1:45 a. m., he and his partner were dispatched to 316 N.E.2nd Street in Oklahoma City, Oklahoma to investigate an altercation. On arrival, he observed a black man, who was obviously dead, lying on the sidewalk. The witness thereupon secured the scene and radioed for a Sergeant, lab technician, and Robbery/Homicide Detectives. The witness further described the

scene of the crime in detail and stated he found a knife, lying on a vehicle in the vicinity, which was allegedly used in the homicide. The witness found that the name of the deceased with "his throat cut from ear to ear," was Jimmy Ray Banks, alias "Tricky Dick", alias "Ricky." The witness observed the body lying out in front of the Moonlight Lounge.

The second witness for the State was John G. Hill, lab technician for the Oklahoma City Police Department. He testified that on arriving at the scene above described, he observed the area and made a search, finding two folding knives, both with the blade open. One knife was in the street, close to the scene, and the other on the passenger fender of a Chevrolet parked parallel in front of the Moonlight Lounge. He took measurements of the scene and photographed the body and the area in which it was found. These photographs were identified by the witness in court and admitted into evidence without objection. The witness further testified that he proceeded to the morgue and photographed the wounds of the deceased. When these photographs were offered into evidence, defense counsel objected to their introduction on grounds that they were not offered for the purpose of identification but rather for the purpose of inflaming the jury. Ultimately three of the five photographs taken at the morgue were admitted into evidence for their probative value, the remaining two being excluded as repetitive.

The third witness for the State was Diane Marie Bullock. She testified that on the night of the altercation she was sitting on Mr. Banks car talking with him in front of the Moonlight Lounge. During that conversation, Miss Bullock observed the defendant walking across the street on his way into the Moonlight Lounge. At that point, Mr. Banks, the deceased, called to the defendant and told him, ". . . not to bring your blank, blank over across this way." The defendant stood there at the door of the lounge and did not say anything. Mr. Banks walked toward the

defendant and attempted to strike him, but the defendant hit the deceased first. At that point the witness observed blood coming from the throat of the deceased. After running around his car, Mr. Banks fell to the pavement approximately 25 to 30 feet from the defendant. The witness then observed the defendant go out into the street, grab Mr. Banks by the hair, pull him up into a sitting position and "cut his throat twice."

The State next called Fred B. Jordan, a physician, and forensic pathologist employed by the Associate Chief Medical Examiner for the State of Oklahoma. Dr. Jordan performed the autopsy on the deceased, Mr. Banks. Dr. Jordan testified that he found a large incised wound extending to the right of the voice box all the way around to the back of the head, nearly coming together on the left side of the anterior neck of the decedent. He further testified that over 50 percent of the bulk of the decedent's neck was severed. The doctor testified that Mr. Banks died of a cut throat and partial decapitation from multiple cuttings of the neck.

The last witness for the State was John W. Hampton who corroborated the testimony of the other witnesses as to the altercation between the defendant and the deceased. The witness furthered testified that, while the defendant was cutting the decedent's neck, the witness yelled at the defendant to, "get up off the man, he is already dead." The defendant let the deceased go and said to the witness that he would cut him too. The defendant then went after the witness, whereupon the witness ran down the street, away from the scene. The witness testified that he heard the defendant threaten to throw the knife at him. When the defendant made that remark, the witness stated he "slipped down" behind a short wall and saw the defendant throw the knife at him. The witness picked up the knife and laid it on the car parked along the street and ran after the defendant, but lost him when the defendant ran into a dark alley.

The State then rested its case. The defendant's demurrer to the evidence was overruled.

The defense, in presenting its case, called two witnesses in behalf of the defendant. Ms. Portia Luzetta Riley, the first witness for the defense, testified that she had known the deceased, Mr. Banks, for eight to nine years as "Ricky Trick." She stated his profession to be "hustling girls." The witness testified to substantially the same facts concerning the altercation as the previous witnesses, but additionally stated she heard the deceased threaten the defendant by saying, "I'm going to kick your ass and then I'm going to kill you." It was at this time that the deceased went after the defendant in an attempt to hit him, but the defendant hit the deceased first. She further testified that during the fight between the deceased and the defendant, deceased attempted to open the trunk of his car to get a shotgun, but there was no evidence that there was, in fact, a shotgun in the trunk.

The last witness for the defense was Miss Ruth Jones. She testified that she was not at the scene of the altercation at the Moonlight Lounge but saw the defendant in a car two or three days later. At that time the witness told the defendant that the police had come to her house looking for him. The witness then took the defendant to the City Jail on his request.

■ The first assignment of error is that the verdict is not substantiated by sufficient evidence. The rule to be applied in this situation was set out by this Court in *Warner v. State*, Okl.Cr., 489 P.2d 526 (1971) wherein we held:

"[W]here there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, . . . since it is the exclusive province of the jury to weigh the evidence and to determine the facts."

In the case at bar, the great weight of the evidence afforded a reasonable basis for conviction. This assignment of error is totally frivolous.

■ The second assignment of error is that the punishment assessed by the trial court is excessive. This Court dealt specifically with this assertion as it applied to the crime of Second Degree Murder in *Smith v. State*, Okl.Cr., 550 P.2d 946 (1976), petition for rehearing Okl.Cr., 552 P.2d 1167 (1976). On rehearing, this Court held:

"[T]he only sentence which the trial court may impose is an indeterminate sentence of ten (10) years to life imprisonment . . ."

In a conviction for Second Degree Murder, an indeterminate sentence of ten (10) years to life is not excessive, nor does it shock the conscience of this Court.

■ Upon extensive review of the record before us, this Court can find no prejudice or fundamental error that would warrant a reversal of the judgment of the trial court. Further, this Court does not have the power to modify the sentence under 22 O.S.1971, § 1066, as in other cases because the penalty is fixed by statute, 21 O.S.Supp.1973, § 701.4. The judgment and sentence is AFFIRMED.

BUSSEY and BLISS, JJ., concur.