Charles F. "Count" MORAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–787.

Court of Criminal Appeals of Oklahoma.

Oct. 15, 1976.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge.

Appellant, Charles F. "Count" Moran, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, with Manslaughter in the First Degree, 21 O.S.1971, § 711, Case No. CRF–75–355. The case was tried before a jury, and a guilty verdict was returned. Punishment was assessed at five (5) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Junior Lee Burris. He testified that on January 24, 1975, he was living with May Ellen Pollard at 701 N.W. 18th Street, Oklahoma City, in an apartment directly above that of defendants. Witness stated that he knew the defendant Charles Moran and that the defendant was at the time living with his estranged wife Emma Pearl Moran, they having affected a reconciliation some four days prior to the date in question. At about 6:00 or 7:00 p. m. on the 24th of January, the witness and May Pollard took dinner down to the Morans. When they entered Mrs. Moran was sitting naked on the floor, and Mr. Moran was sitting on a bed nearby. Mrs. Pollard tried to give Mrs. Moran some water but she would not drink, nor could she be moved. Burris and Pollard then returned upstairs to their own apartment.

Burris testified that while in his apartment he could clearly hear all that went on below, and that from the time he left until going to bed at 9:30 p. m. he heard the defendant cursing and singing. Burris further testified that at one point he heard something hit hard against the wall. At about midnight the witness was awakened when the defendant knocked on his door asking to use the telephone. The defendant stated that his wife was dead and asked Burris to come down and look at her. Burris went down and looked at the deceased. She appeared at the time to be dead.

The second witness was May Ellen Pollard. Her testimony was by and large corroborative of Burris'. Pollard added that on the Wednesday before the Friday in question the Morans had been drinking with her and Burris in Burris' apartment. The witness stated that Mr. Moran was quite intoxicated and belligerent. Pollard testified that Mrs. Moran asked if it would be all right to spend the night in the Pollard-Burris' apartment, as she was afraid of Mr. Moran. Pollard said it would be all right, and then secured accommodations for her with another neighbor.

Also the witness Pollard testified that when she brought dinner down to the Morans on the evening of the 24th she noticed extensive bruises over most of deceased's body. After she had left the Moran's apartment and had gone back to her own, Pollard stated that she heard Mr. Moran cursing and swearing at the deceased off and on from the time she left until the defendant came up requesting to use the telephone. She also testified as to hearing something strike the wall with a great deal of force.

The State's third witness was A. J. Chapman, a physician, a forensic pathologist licensed by the State of Oklahoma. He testified that he had done an autopsy on Mrs. Moran and that the cause of death was a lacerated liver, which in his opinion was caused by a large amount of blunt force administered over a considerable area of her abdomen. The force he testified had "squashed" her liver as well as loosening her gall bladder. He also stated that her blood contained .25% alcohol

which would indicate a considerable degree of intoxication. He testified as to numerous bruises all over her body, and that she had six cracked ribs. In his 'opinion the liver could not have received the trauma it did from a fall downstairs. The State then rested.

The defendant then took the stand. He stated that he and his wife were married in 1964 and divorced in 1974 because of her drinking problems. They effected a reconciliation on or about the 20th day of January, 1975 and planned to remarry on February 7. The defendant testified that he and his wife had gone up to visit Pollard and Burris on the evening of the 24th and they had consumed some alcohol there. While visiting, Mrs. Moran gave May Pollard $10.00 for medicine for her children. The defendant claimed that Mrs. Moran had $195.00 on her person that evening. As they were leaving to go downstairs, the defendant stated that Mrs. Moran fell down the stairs. He further stated that Burris helped carry her into their apartment.

Mrs. Moran declined to go to a hospital. In a short time May Pollard brought down the dinner. Moran states his wife was clothed at the time and sitting on a chair. A short time after Burris and Pollard had gone, Mrs. Moran asked Mr. Moran to get more whiskey. He tried to dissuade her but she prevailed. He then testified that she also requested him to pick up a new T.V. stand. He stated that on the previous Wednesday, while intoxicated, his wife had fallen over a glass T.V. stand breaking it and injuring herself on a chair. He stated that he left the apartment to pick up a new stand and whiskey and that as he left, Mrs. Moran locked the door. When he returned some forty minutes later the door was unlocked and his wife was in bed. She appeared to be sickly and was vomiting into a small container. He gave her some assistance but thereafter fell asleep. When he awoke she was dead. He denied having cursed or made loud noises claiming however that a neighbor had been cursing and yelling periodically throughout the evening of the 24th.

The defendant further stated that he has a crippled right hand and that he can do very little with it. After the police came, the defendant testified that he stated to them that he did not wish to remain in the apartment. He stated that he looked in his wife's purse for the $195.00 which she had so that he could stay in a motel but there was only some change. He also denied having ever struck his wife. The defense then rested.

Junior Lee Burris was then recalled. He denied that Mrs. Moran had fallen down the stairs. May Pollard was also recalled. She too denied that Mrs. Moran had fallen on Friday the 24th.

The case then went to the jury upon the court's instructions. The guilty verdict was returned.

The defendant asserts two assignments of error on this appeal. The first is that the verdict is not supported by the weight of the evidence. We find this to be without merit. While it is true that there were no witnesses who actually saw the defendant strike Mrs. Moran, it has long been the rule that a State's case for homicide may be entirely grounded upon circumstantial evidence. *Drake v. State*, Okl.Cr., 437 P.2d 461 (1968); *Ridinger v. State*, 97 Okl.Cr. 377, 267 P.2d 175 (1954).

In the present case the fact of death could not be disputed. Rather it is the criminal agency of this defendant as the cause of death which is controverted. No one claimed to see the killing, or the act which caused the death. However, this inference can be drawn from the various facts in the record, including the threats and belligerency of the defendant toward the deceased and the fact the defendant was the only one in the apartment other than the deceased. However, it must be noted that in Oklahoma, where the State's evidence is purely circumstantial, the evi-

dence must be such in order to sustain a conviction that the only reasonable inference that can be drawn is one of guilt. *Randolph v. State*, 26 Okl.Cr. 332, 223 P. 723 (1924). However this rule is open to the exception that when the defendant takes the stand and offers his own version of the facts the evidence is no longer entirely circumstantial, and thus the original rule is no longer applicable. *Lowrey v. State*, 87 Okl.Cr. 313, 197 P.2d 637 (1948). Thus when the defendant took the stand the jury was no longer presented with a one-sided view of the occurrences of the night in question. The facts were put in issue, and it became the duty of the jury, and no one else, to evaluate them. By the rule laid down in cases such as *Williams v. State*, Okl.Cr., 373 P.2d 91 (1962), we cannot disturb those findings.

██ The second assignment of error is that the verdict was excessive. Inasmuch as punishment was assessed at five years' confinement, and the minimum punishment as established by law for first degree manslaughter is four years, we find this contention to be without merit. This Court has held before, and holds now, that where the punishment assessed is within the range established by the legislature we will not disturb it unless under all of the facts and circumstances of the case the sentence is so excessive as to shock the conscience of the Court. *Poke v. State*, Okl.Cr., 515 P.2d 252 (1973).

We have examined the record of this case for fundamental error. Finding none, we *AFFIRM*.

BUSSEY and BLISS, JJ., concur.