**Robert Paul THORNBURGH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–88–897.**

Court of Criminal Appeals of Oklahoma.

May 30, 1991.

Rehearing Denied July 3, 1991.

Paula M. Henderson, Asst. Appellate Public Defender, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. of Okl., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Appellant, Robert Paul Thornburgh, was charged with First Degree Murder in Oklahoma County District Court, Case No. CRF–86–3863. The case was tried by jury before the Honorable Leamon Freeman, District Judge. Judge Freeman sustained appellant's demurrer to the charge of Murder in the First Degree and proceeded on the charge of Manslaughter in the First Degree (21 O.S.Supp.1984, § 711). The jury convicted appellant of First Degree Manslaughter and set punishment at sixty (60) years imprisonment. Judgment and Sentence was entered accordingly. We reverse.

Eight-year-old Robert Seeton was reported missing by his mother on July 10, 1985. On July 29, 1985, the boy's body was found underneath a vacant house. The remains consisted of a skull and upper torso, which were covered by mummified skin, and bones which were scattered under the house and in the back yard. The body had been disturbed and partially eaten by animals. The identity of the body was determined by dental records. About one year later, after being arrested in Abilene, Texas on unrelated charges, appellant confessed to killing Robert Seeton. Other facts will be discussed as they become relevant.

Appellant raises four propositions of error. We discuss only the second which we have concluded requires reversal. Therein, appellant correctly asserts that the prosecution failed to prove the corpus delicti of the crime. Corpus delicti means the actual commission of a particular crime by someone. *Rawlings v. State*, 740 P.2d 153, 160 (Okl.Cr.1987). Specifically, in a homicide case, the prosecution must prove two fundamental and necessary facts: First, the death; and second, the criminal agency of another as the cause of death. *Jones v. State*, 523 P.2d 1126, 1130 (Okl.Cr. 1974). The death of the person and the killing by the accused must each be established as independent facts and proven beyond a reasonable doubt. 21 O.S.1981, § 693.

The prosecution is not required to prove the corpus delicti beyond a reasonable doubt independent of a defendant's confession. *Cook v. State*, 704 P.2d 86, 87 (Okl.Cr.1985). It is sufficient if the prosecution offers substantial evidence of the corpus delicti. Having done so, the prosecution may introduce a defendant's confession and if, in totality, the evidence proves a defendant's guilt beyond a reasonable doubt, the prosecution's case is sufficient. *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954); *Smith v. State*, 659 P.2d 330, 333 (Okl.Cr.1983); *Medina v. State*, 654 P.2d 633, 634 (Okl.Cr. 1982); *Smith v. State*, 555 P.2d 626, 628 (Okl.Cr.1976). Only after substantial evidence tending to prove the corpus delicti is introduced may the prosecution offer a defendant's confession into evidence. *Jones v. State*, 555 P.2d 63, 68 (Okl.Cr.1976).

In the instant case, we find that the prosecution failed to provide substantial evidence which could establish that the deceased died as a result of the criminal agency of another before the admission of appellant's confession. Generally, evidence of criminal agency is provided in homicide cases by a pathologist who renders an opinion as to the cause of death. No such evidence was offered in the case at bar. The forensic pathologist in the instant case, Dr. Balding, testified that "there was no

evidence of any kind of a traumatic injury that could be stated, if you will, ante mortem, or while the victim was alive." Dr. Balding listed the cause of death as "undetermined" and the manner of death "unknown."

■ In reaching our decision we are not unmindful that corpus delicti may be established by circumstantial evidence. *Moran v. State*, 555 P.2d 1085, 1087 (Okl.Cr.1976). The State contends that evidence was presented that circumstantially established that the deceased died as a result of a criminal act. The State points to evidence tending to show that appellant was seen with the deceased on the day the boy disappeared. George Seeton, the younger brother of the deceased, testified that on the day his brother disappeared he and the deceased were in the company of an adult male that George called "friend." The two boys and "friend" were at a clubhouse near a park. Both George and the deceased then returned to their home. Thereafter, George Seeton testified that the deceased left their home after stating, "I'm going to friend's house." This was the last time George Seeton saw his brother. George Seeton did not identify appellant as the person he called "friend." Although the aforestated evidence did establish that appellant was with the deceased on the day he disappeared, we find that it did not circumstantially establish that Robert Seeton died as a result of a criminal act.

The State also claims that testimony which established that appellant had knowledge of the location and condition of the body before its discovery by police is sufficient circumstantial evidence to establish criminal agency. Sofronia Young and Jo Ann Carrier lived in the neighborhood near the house where the body was found. Each testified to a conversation had with appellant wherein he pointed to the house where the body was later found and stated that the body would be found at that location, cut up and put into bags. This evidence does not substantially prove that the deceased died as a result of criminal conduct. Such knowledge does not create a rational inference that the death was *caused* by an act criminal in origin. Knowledge of the location and condition of the body is not evidence proving that appellant caused the death or that the death was the result of criminal conduct.

Next, the State alleges that the fact that the body was found partially in a dug out grave constitutes substantial circumstantial evidence of corpus delicti. Again, we disagree. Such evidence establishes only what happened to the body and provides no conclusive evidence on whether the death was caused by a criminal act.

Finally, the State asserts that the medical examiner's determination that the type of death was "unusual" is substantial evidence of corpus delicti. We disagree. The manner and condition that the body was found decidedly justifies the conclusion that the death was unusual. However, it is a bold, and in our view, impermissible inference to conclude that because the type of death was unusual the cause of death was the criminal agency of another. We find that the above evidence, standing alone or cumulatively, and taken in the light most favorable to the State does not rise to the level of substantial evidence that the State is required to produce to prove corpus delicti.

This Court has adopted the reasoning used in *Opper v. United States, supra,* which, in part, consists of the following: "It is necessary ... to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the [confession]." *Medina*, 654 P.2d at 634. In appellant's confession, the following statements were reported:

Q: Will you tell me how you killed Robert Seeton?

A: I punched him in the stupid chest and apparently I had my knife in my hand. I didn't even know I had it. I just wanted to put something in my hand.

\* \* \* \* \* \*

Then I reached in my pocket and pulled out something. I hit him dead center in the chest with all my might. At this time he fell back with a blank look....

Furthermore, the prosecution produced witnesses, consisting of officers Bemo and Berry, who testified that appellant confessed to hitting the deceased in the chest with a leather punch. However, during direct examination of Dr. Balding, the following transpired:

Q: Okay. Now, if the puncture would have been in that area [the front of the torso], the erosion and decomposition would have destroyed what you could have identified as a puncture wound, would it not?

A: Well, no, sir. Again, on the chest, on the front of the body, the chest and skin was relatively intact. Again, there was a little decomposition. But if there had been a puncture wound completely through the chest, which, of course, would—it would have been required to cause death, I think I would have seen it. It would have been there.

The prosecution also failed to independently establish that the deceased's arms and legs had been cut off. Appellant confessed to cutting off the arms and legs so that the body could be placed in the grave. However, Dr. Balding testified, "We looked extensively and saw no evidence of, if you will, mechanical disarticulation...." Dr. Balding acknowledged that if cut marks had been present on the ends of the bones these marks would have been masked by the animal activity.

Lastly, appellant confessed to putting lime on the body to "speed up decomposition." Chemical analysis of the soil did not reveal the addition of lime. Based on the foregoing, we conclude that the prosecution failed to introduce independent evidence that would tend to establish the trustworthiness of appellant's confession.

█ The State correctly sets forth the rule of law that "where a dead body is found with marks of violence upon it, or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's own confession, establishes the corpus delicti in a murder case." *Leeks v. State*, 95 Okl.Cr. 326, 245

P.2d 764, 769 (1952). *See also, Goforth v. State*, 644 P.2d 114, 118 (Okl.Cr.1982) *Drake v. State*, 437 P.2d 461, 464 (Okl.Cr. 1968). However, in the case at bar, the conditions surrounding the site where the body was found were so changed by independent intervening facts that all indications of an unnatural or violent death, to the extent that they ever existed, were destroyed. Therefore, we are left to speculate as to whether the criminal agency of another caused Robert Seeton's death.

A confession standing alone, and not corroborated by independent proof of the corpus delicti, will not sustain a conviction. *State ex rel. Peterson v. Ward*, 707 P.2d 1217, 1219 (Okl.Cr.1985); *Davis v. State*, 542 P.2d 532, 535 (Okl.Cr.1975). Because the State's evidence was insufficient to properly establish the corpus delicti independent of appellant's confession, we must REVERSE and REMAND this cause to the trial court with instructions to DISMISS.

LANE, P.J., and BRETT, J., concur.

LUMPKIN, V.P.J., and JOHNSON, J., dissent.

LUMPKIN, Vice Presiding Judge, dissents:

I must respectfully dissent to the Court's determination that insufficient evidence was presented to sustain the verdict of the jury.

We have previously sustained a conviction for murder in the first degree where the body of the victim was never found. See *Rawlings v. State*, 740 P.2d 153 (Okl. Cr.1987). The issue of corpus delicti was addressed in the context of that case and the Court held:

The appellant correctly asserts that proof of a corpus delicti must be beyond a reasonable doubt. 21 O.S.1981, § 693. Corpus delicti means the actual commission of a particular crime by someone. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr. 1983). The State must prove the corpus delicti beyond a reasonable doubt by evidence other than a confession. *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982). It is not necessary that the corpus delicti

should be established by direct and positive proof. It may be proved as well by circumstantial evidence, if on all the evidence, the jury is satisfied of the defendant's guilt beyond a reasonable doubt. *Brown v. State*, 9 Okl.Cr. 382, 132 P. 359 (1913).

In a prosecution for homicide, the corpus delicti consists of two fundamental and necessary facts: first, the death; second, the criminal agency of another as the cause for that death. *State v. Edmondson*, 536 P.2d 386 (Okl.Cr.1975). As applied to this case, it was necessary to show, first, that Sally Rawlings died from the effects of a wound, and second, that the wound was unlawfully inflicted by the defendant.

When the sufficiency of the evidence presented at trial is challenged on appeal, as it is here, the proper test is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985). 740 P.2d at 160.

In *Rawlings* the State was able to prove the death of the victim, absent a body, based on circumstantial evidence. The Court properly applied the evidentiary test set forth in *Spuehler* and determined the essential elements of the offense could have been found by any rational trier of facts. The Court's treatment of the corpus delicti issue in this case in effect treats the production of the victim's body in a detrimental manner, rather than the positive result it should have. The production of the body establishes the first fact enunciated in *State v. Edmondson*, the death. In *Rawlings* the death was never proved by direct evidence, only circumstantially. In this case the death was proved by direct evidence and that independent evidence is sufficient to prove the corpus delicti when coupled with the corroborated statements made by Appellant to third parties prior to the discovery of the body and the confessions given to law enforcement officers. The location of the body where the Appel-

lant said it would be prior to its discovery and the manner in which the body was buried is sufficient independent evidence to corroborate the statements and confession and support a conviction pursuant to the *Spuehler* test. If the evidence was sufficient to sustain a conviction without a body in *Rawlings*, the evidence in this case is sufficient to sustain a conviction because the body has been produced. I therefore dissent to the Court's determination that the corpus delicti has not been proven.