1998 OK CR 43

Joe Vance **TILLEY**, Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–96–441.

Court of Criminal Appeals of Oklahoma.

July 7, 1998.

Rehearing Denied Aug. 5, 1998.

See also 869 P.2d 847.

Joseph O. Minter IV, Madill, for Defendant at trial.

Gary Henry, District Attorney, Charles Migliorino, Assistant District Attorney, Tishomingo, for the State at trial.

Jamie D. Pybas, Appellate Indigent Defense, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General, Robert Whittaker, Assistant Attorney General Oklahoma City, for Appellee on appeal.

## OPINION

JOHNSON, Judge:

¶ 1 Joe Vance Tilley was tried by a jury in the District Court of Johnston County, Case No. CRF–90–71, before the Honorable Thomas S. Walker. Tilley was convicted of First Degree Malice Aforethought Murder. After finding the existence of one aggravating circumstance—Tilley posed a continuing threat to society—the jury set punishment at death. The trial court sentenced Appellant accordingly. Tilley now appeals.

¶ 2 During the early morning hours of September 14, 1990, fifteen-year-old Kimberly Ann James sneaked out of her house to meet sixteen-year-old Joe Vance Tilley. The two teenagers attended high school together in Madill. Tilley then took James riding around in his car. Tilley eventually pulled off the roadway and stopped the car. After directing James to get out of the car, Tilley asked James whether she believed he was crazy or would kill her. Tilley then proceeded to strangle James until he could no longer feel a pulse. Thereafter, Tilley placed James' body in his car and drove her to a bridge over the Washita River, where he threw her body into the water. Two fisherman discovered James' body floating face down in the river on the afternoon of Monday, September 17, 1990.

¶ 3 Prior to his arrest, Tilley made statements to Wilma Rushing Bentley and Gregg Maddox about the murder. During these conversations, Tilley stated he had killed James and gave specific details about the murder. Tilley also confessed to law enforcement after his arrest.

### Pretrial Issues

¶ 4 Tilley submits in his sixth proposition of error that the Information was insufficient as it failed to allege all the elements of malice murder. Tilley specifically contends the trial court never acquired subject matter jurisdiction over this case because the indispensable "malice aforethought" element was not alleged in the Information filed against him. As Tilley did not object to the Information at trial, we review only for plain, reversible error. *Conover v. State*, 1997 OK CR 6, 933 P.2d 904, 909.

¶ 5 In *Parker v. State*, 1996 OK CR 19, 917 P.2d 980, *cert. denied*, —— U.S. ——, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997), this Court rejected *Miller v. State*, 1992 OK CR 8, 827 P.2d 875, and concluded that any failure to allege facts constituting an offense raises due process questions but does not automatically affect the trial court's jurisdiction. *Parker*, 917 P.2d at 985. Thus, review of this issue focuses on whether the Information gave the defendant notice of the charges against him and apprised him of what he must defend against at trial. *Id.* at 986. This determination is to be made on a case-by-case basis. "[T]his Court will look to the 'four corners' of the Information together with all material that was made available to a defendant at preliminary hearing or through discovery to determine whether a defendant received notice to satisfy due process requirements." *Conover*, 933 P.2d at 909.

¶ 6 The Information in the instant case set forth sufficient facts to give Tilley notice of the charge against him. The use of the phrase "with premeditated design" was sufficient to advise Appellant that he was charged with malice aforethought murder. *Conover*, 933 P.2d at 910. *See also Holloway v. State*, 1979 OK CR 113, 602 P.2d 218, 220. It is also clear from the trial record that Tilley understood he was charged with mal-

ice aforethought murder. Consequently, we find no due process violation occurred.

¶ 7 Tilley contends, however, that retroactive application of *Parker* to his case violates Oklahoma case law and is fundamentally unfair under federal and state constitutional provisions for due process and equal protection of the laws. This issue was specifically addressed and rejected by this Court in *Conover*, 933 P.2d at 910. *See also Miles v. State*, 1996 OK CR 24, 922 P.2d 629, 631 (application of *Parker* does not deny a defendant of a substantial personal right nor does it violate the prohibition against ex post facto laws). We need not revisit this issue at this time.

¶ 8 The Information in the present case was not ambiguous and set forth the requisite mens rea to place Tilley on notice that he was charged with malice murder. This proposition of error is denied.

■ ¶ 9 In his fourteenth proposition of error, Tilley submits that Oklahoma's reverse certification statutes are inadequate to insure that a sixteen-year-old offender is sufficiently mature and morally responsible to be subjected to the death penalty. Tilley appealed the denial of his reverse certification motion in *Tilley v. State*, J–92–114 (not for publication opinion decided on October 1, 1992). All challenges to the reverse certification procedure should have been presented and decided in that matter. This allegation of error is not properly before us at this time.[1]

### Issues Relating to Guilt/Innocence

¶ 10 On August 28, 1991, defense counsel filed a motion to quash the Information in this case based on the State's failure to prove the corpus delicti of the crime. A hearing was held on December 22, 1992, at which time argument was presented. The court reserved ruling on the motion and ordered both parties to submit briefs on the issue. On January 13, 1993, relying on *Thornburgh v. State*, 1991 OK CR 65, 815 P.2d 186,[2] the district court sustained Tilley's motion to quash finding the State had failed to sufficiently prove the corpus delicti of the crime. The district court also ordered the charge dismissed and bond exonerated, and stayed the order of dismissal and exoneration of the bond pending the State's appeal.

■ ¶ 11 On December 5, 1994, in an unpublished opinion (*State v. Tilley*, Case No. F–93–660), this Court reversed the district court's order finding that the corpus delicti rule set forth in *Thornburgh* had been overruled by *Fontenot v. State*, 1994 OK CR 42, 881 P.2d 69.[3] Thereafter, Tilley filed a Petition for Rehearing arguing, in part, that the Court's decision improperly subjected him to an *ex post facto* application of substantive law. On October 11, 1995, this Court denied Tilley's rehearing motion. Citing *Mitchell v. State*, 1994 OK CR 70, 884 P.2d 1186, 1204, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995), the Court reasoned that the application of a new evidentiary rule in a trial for a crime committed prior to the evidentiary change is not prohibited by the constitutional prohibition against *ex post facto* law.

¶ 12 In his first assignment of error, Tilley again contends the retroactive application of this Court's decision in *Fontenot* violated judicial *ex post facto* principles. Review of this claim is barred by the doctrine of *res judicata*. This issue was fully addressed by this Court in its October 11, 1995, order denying Tilley's motion for rehearing.

---

1. Moreover, Tilley's argument is misplaced. The reverse certification process is a preliminary, pre-trial stage of a prosecution. *See Hain v. State*, 1993 OK CR 22, 852 P.2d 744, 748, *cert. denied*, 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). "Defining the class of offenders potentially eligible for the death penalty is not a function of 10 O.S.Supp.[1993], § 1104.2." *Hain*, 852 P.2d at 748.

2. In *Thornburgh*, the Court held that a defendant's confession could not be introduced into evidence until the State had presented substantial evidence tending to prove the corpus delicti of the crime.

3. In *Fontenot*, 881 P.2d at 77–78, this Court eliminated the corpus delicti rule and adopted the standard established in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The *Opper* standard simply requires that a confession be supported by substantial independent evidence which tends to establish its trustworthiness.

¶ 13 Tilley asserts in his second assignment of error that the evidence was insufficient to sustain his conviction for first degree murder. Tilley maintains his conviction cannot stand as it was based solely upon his uncorroborated confession. He contends that even under the *Opper* standard[4] adopted in *Fontenot,* the State completely failed to corroborate his confessions with substantial independent evidence. We disagree.

▆ ¶ 14 "A confession may be considered trustworthy if it is corroborated by substantial independent evidence." *Rogers v. State,* 1995 OK CR 8, 890 P.2d 959, 975, *cert. denied,* 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995). *See also Fontenot,* 881 P.2d at 80–1. However, each material element does not have to be corroborated by facts independent of the confession. *Rogers,* 890 P.2d at 975. In fact, inconsistencies between the facts proven and the facts related in the confession may exist, so long as the inconsistencies do not overwhelm the similarities. *Id.*

▆ ¶ 15 The State in the instant case provided sufficient corroborative evidence independent of Tilley's confession to show its trustworthiness and thus its competence. First, in addition to confessing to law enforcement, Tilley made several post-crime statements in which he admitted killing the victim. *See Johnson v. State,* 1995 OK CR 62, 911 P.2d 918, 925, *cert. denied,* —— U.S. ——, 117 S.Ct. 116, 136 L.Ed.2d 67 (1996). During two separate conversations with Wilma Rushing Bentley, Tilley stated that he had killed Kimberly James. During the second conversation, Tilley described in detail the events leading up to the victim's murder and the actual murder. Tilley also spoke with Gregg Maddox in detail about the murder. Tilley's post-crime statements to Maddox were consistent with his statements to Bentley.

¶ 16 Second, although the autopsy was inconclusive as to the victim's cause of death, Dr. Chai Choi testified that the left part of the victim's head had a purplish to green coloring which indicated some traumatic bruises in that area. This evidence of bruising was consistent with Tilley's statements that he had dropped the victim on her head when he was attempting to throw her over the bridge.

¶ 17 Third, the victim's body was found in the Washita River four or five miles north of Dickson approximately 75 to 100 yards east of the River Bridge. The location of the victim's body is consistent with Tilley's post-crime statements to Gregg Maddox.

¶ 18 Finally, Tilley's voluntary confession to the Herman Deagon murder in Carter County, which occurred just four days prior to the James murder, corroborates the trustworthiness of Tilley's confession to the James murder. When asked whether Tilley wished to discuss the murder, Tilley responded "Which one?" Thereafter, Tilley confessed to both the James and Deagon murders.[5] Tilley also assisted Sheriff Bill Noland in recovering the .22 pistol used to kill Deagon. Under these particular circumstances, we find the trustworthiness of Tilley's confession to the Deagon murder is indicative of the trustworthiness of Tilley's confession to the James murder.

¶ 19 This evidence sufficiently corroborated Tilley's confession. Thus, the jury was free to consider it as evidence of guilt and the evidence was sufficient to convict Tilley of first degree murder. This proposition of error fails.

¶ 20 In his third assignment of error, Tilley contends the trial court erroneously admitted his inculpatory statements to Gregg Maddox which were made the morning of his arrest. On the evening of September 17, 1990, the same evening in which Kimberly James' body was identified, Gregg Maddox had two separate telephone conversations with Tilley. During these conversations, Tilley informed Maddox that he had killed the victim and described the events leading up to the murder and the actual murder. Maddox

4. *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164–65, 99 L.Ed. 101 (1954).

5. Sheriff Bill Noland was unaware Tilley had committed another murder when he began questioning Tilley regarding the James murder.

later related the details of his conversations with Tilley to the police.

¶ 21 The next morning, Maddox agreed to wear a wire transmitter to school in an attempt to obtain additional information about the murder. The plan was for Maddox to meet up with Tilley at school and instigate a conversation with Tilley regarding Kimberly James. Maddox testified that he had been instructed to ask Tilley specific questions. Officer Sikes and Deputy Sheriff Bilbrey drove Maddox to school and dropped him off. Several other officers were also stationed at various points around the high school.

¶ 22 Maddox saw Tilley outside the gymnasium and initiated a conversation. As instructed by police, Maddox first asked Tilley if he had taken James' shoes off before he threw her body off the bridge. Tilley replied, "No, they must have fallen off.". Maddox next inquired how James got a knot on her head. Tilley responded that he had dropped James as he was getting her body out of the car. Maddox next asked Tilley about James' eyes. Tilley stated something like "if he'd had a knife, he'd cut out her eyes and saved 'em." Finally, as instructed by police, Maddox asked Tilley if he had wiped off his car. Tilley responded that he had and had removed some hair from the back seat. After this conversation, Maddox walked away from Tilley and saw the police move in and arrest and handcuff Tilley.

¶ 23 Prior to trial, defense counsel filed a motion to suppress Tilley's statements to Maddox. Defense counsel argued at a pretrial suppression hearing held on December 22, 1992, that the confession obtained by Maddox was taken in violation of Tilley's right against self-incrimination and his rights under Title 10, Section 1109. Defense counsel also objected to this evidence at trial asserting it was taken in violation of § 1109. On appeal, Tilley further contends this evidence was admitted in violation of his rights under the Fourteenth Amendment to the United States Constitution, Article II §§ 7, 9 and 21 of the Oklahoma Constitution. We find merit to this claim.

¶ 24 Title 10 O.S.Supp.1989, § 1109(A) provides:

> No information gained by questioning a child nor any evidence subsequently obtained as a result of such information shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer ... is done in the presence of the parents, guardian, attorney, or legal custodian of the child.

¶ 25 At the time Tilley spoke with Maddox at school, Tilley was still a "child" in the statutory meaning of the term. *See* 10 O.S.Supp.1989, § 1104.2(A). The reverse certification mechanism is not triggered until the accused juvenile is arrested and detained for a reverse-certification crime. Once this occurs, the sixteen or seventeen-year-old accused has all the statutory and constitutional rights and protections of an adult accused of a crime. *See Young v. State*, 1991 OK CR 29, 807 P.2d 276, 278.

¶ 26 Since the reverse certification mechanism had not yet been triggered, the key question here is whether Maddox's questioning of Tilley violated the special protections of § 1109. In *State v. M.A.L.*, 1988 OK CR 274, 765 P.2d 787, 790, this Court found that a child need not be in custody in order to trigger § 1109. While at school, the defendant in *M.A.L.* was questioned at least twice by an assistant principal. After obtaining statements incriminating M.A.L., the assistant principal contacted police. Thereafter, he questioned M.A.L. in the presence of a police officer. This Court concluded that § 1109 was applicable as the assistant principal was acting in an investigative manner when he questioned M.A.L. at school. In reaching this determination, the Court noted that the principal's investigation dealt with criminal activity which was more than a violation of school rules or school policy.

¶ 27 We find the Court's rationale in *M.A.L.* is applicable to the instant case. Maddox was clearly acting as an agent for the State when he approached and questioned Tilley. Maddox's conversation with Tilley regarding the James murder was instigated at the direction of law enforcement. Moreover, the police instructed Maddox to ask Tilley specific questions regarding certain factors surrounding the murder. Under

these particular circumstances, we find § 1109 was applicable. Thus, the trial court erred when it admitted the statements Tilley made to Maddox at school just prior to his arrest. However, in light of Tilley's other post-crime statements to Wilma Rushing Bentley and Gregg Maddox, we find this error was harmless beyond a reasonable doubt with regard to the jury's finding of guilt.[6] *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

¶ 28 Citing *Lewis v. State,* 1984 OK CR 93, 695 P.2d 528, Tilley contends in his fourth assignment of error that his waiver of *Miranda* rights was "vitiated" when the police failed to inform him that an attorney was attempting to contact him. Tilley does not dispute that the police followed the procedures established in *Miranda.* Rather, he contends his confession should have been suppressed because the police deprived him of information essential to his ability to knowingly waive his Fifth Amendment rights.

¶ 29 This Court in *Lewis* found the eighteen-year-old defendant's *Miranda* waiver invalid because law enforcement had failed to advise Lewis that an attorney hired by his parent was attempting to locate him and was available. Subsequent to our decision in *Lewis,* the United States Supreme Court decided *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Dealing with the same issue, the *Moran* Court held that the failure of police to inform a murder suspect of telephone calls from an attorney, who had been contacted by the suspect's sister, did not undermine the validity of the suspect's waiver of his *Miranda* rights. In reaching this determination, the Court stated "we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Moran,* 475 U.S. at 422, 106 S.Ct. at 1141. The pivotal question is whether the suspect voluntarily, knowingly and intelligently waived his rights. "Events

occurring outside of the presence of the suspect and entirely unknown to him ... have no bearing on the [suspect's] capacity to comprehend and knowingly relinquish a constitutional right." *Id.*

¶ 30 While we are cognizant that States are free to provide greater protections in their criminal justice systems than the Federal Constitution requires,[7] we now adopt the Supreme Court's rationale in *Moran.* Applying *Moran* to the present case, we find Tilley's waiver of his Fifth Amendment rights valid. Tilley was fully advised of his rights and informed of the consequences if he abandoned those rights. Tilley's waiver of his *Miranda* rights was not "vitiated" when the police failed to inform him that an attorney was attempting to contact him. This proposition of error is denied.

¶ 31 In his fifth proposition of error, Tilley contends reversible error occurred when the trial court admitted State's Exhibits 8 and 9. State's Exhibit 8 was a photograph of the victim taken while she was living. The victim appeared to be standing in a gymnasium and was holding a basketball. Defense counsel's objection to its admission was overruled. State's Exhibit 9 was a copy of a poster dealing with the victim's disappearance. The poster also included a photograph of the victim. Defense counsel failed to object to the introduction of this exhibit, and it was admitted into evidence by the trial court. Thus, Tilley has waived all but plain error with respect to the admission of State's Exhibit 9. *See Robinson v. State,* 1995 OK CR 25, 900 P.2d 389, 397.

¶ 32 "Photographs of [homicide] victims [taken while alive] are inadmissible unless they are relevant to some material issue and their relevancy outweighs the danger of prejudice to the defendant. ... [W]here there is no purpose in introducing such pictures into evidence, such admission invokes the sympathy of the jury and constitutes error." *Valdez v. State,* 1995 OK CR 18, 900 P.2d 363, 381, *cert. denied,* 516 U.S. 967, 116 S.Ct. 425,

---

6. We need not address what effect this error had on the punishment stage of trial as this matter must be remanded to the district court for resentencing.

7. *See California v. Ramos,* 463 U.S. 992, 1014, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983).

133 L.Ed.2d 341, *quoting Staggs v. State,* 1991 OK CR 4, 804 P.2d 456, 458.

¶ 33 We find no error occurred with the admission of State's Exhibit 9. During cross-examination of Wilma Rushing Bentley, an issue arose as to when people learned that the victim was indeed dead. Tilley was attempting to demonstrate that at the time Tilley confessed to Rushing and Gregg Maddox, the public already knew the victim was dead. If Tilley already knew the victim had been discovered and was dead, his statements regarding the details of the murder would not be as telling. Exhibit 9 was used by the State on re-direct to demonstrate that information regarding the victim's discovery and death was not out until the day after Tilley made his inculpatory statements to Rushing and Maddox.

¶ 34 On the other hand, the victim's photograph contained in State's Exhibit 8 was not relevant to any issue in the case against Tilley. While Kimberly James' body was badly decomposed, her identity was not an issue as defense counsel stipulated that the body recovered in the Washita River was Kimberly James. The State contends that exhibit 8 was necessary to lay a proper foundation for the introduction of Tilley's admissions to Wilma Rushing Bentley. The State submits the picture was essential to demonstrate that Tilley was confessing to the murder of Kimberly James not another unknown victim. This contention clearly fails. Thus, as State Exhibit 8 was not relevant to a material issue, we find the trial court abused its discretion when it admitted this exhibit. However, given the evidence against Tilley, we find that this error did not contribute to the jury's guilty verdict.[8]

### Prosecutorial Misconduct

¶ 35 Tilley contends in his eighth proposition of error that prosecutorial misconduct in both stages of the trial deprived him of due process of law and a reliable sentence. Due to errors found in the sentencing stage of trial, we will only address Tilley's allegations of misconduct during the guilt/innocence stage of trial.

¶ 36 Tilley initially contends the State improperly argued facts not in evidence. During his first stage closing argument, the prosecutor told the jury that after confessing, Tilley took Sheriff Noland to the exact place "where Kimberly's shoe [was] found." Defense counsel's objection to this comment was overruled. On appeal, Tilley contends this was a serious misstatement of the evidence as no witness ever established that the shoe found actually belonged to Kimberly James. Upon review, we find the prosecutor's comment constituted a reasonable inference arising from the facts in evidence. *Manuel v. State,* 1990 OK CR 80, 803 P.2d 714, 717 ("both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments.")

¶ 37 Tilley asserts next that the prosecutor improperly evoked sympathy for the victim by repeatedly making reference to the fact that Kimberly James was reduced to an "it" by Tilley's actions.[9] Defense counsel failed to timely object to these comments. Thus, Tilley has waived all but plain error. *Hunt v. State,* 1990 OK CR 37, 793 P.2d 1366, 1368; *Quilliams v. State,* 1989 OK CR 55, 779 P.2d 990, 991–92; *Harris v. State,* 1989 OK CR 34, 777 P.2d 1359, 1362. No such error occurred here. While we certainly do not condone the prosecutor's improper attempts to evoke sympathy for the victim in this case, the prosecutor's comments did not effect the jury's verdict of guilt.

### Issues Relating to Punishment Stage of Trial

¶ 38 During the penalty phase of trial, the State called three witnesses to present evidence in support of the death penalty.

8. What effect this error had on the punishment stage of trial need not be addressed as this matter must be remanded for resentencing.

9. On one particular occasion, the prosecutor stated:

Mr. Tilley turned a young girl, a young girl standing with a basketball, a young girl who would get up, go get some milk out of the fridge, talk on the phone, lay in her bed, turned her into an it. For what reason? He just did it.

Gregg Maddox returned to the stand to testify about the shooting death of Herman Deagon. Tilley committed this murder in Carter County just four days prior to the Kimberly James murder. On March 2, 1993, Tilley was convicted of this murder and sentenced to life imprisonment without the possibility of parole. Former Carter County Sheriff, Bill Noland, also testified during the penalty stage. Noland testified regarding Tilley's voluntary confession to the Deagon murder. Finally, the State presented evidence regarding a rape allegation against Tilley. The alleged rape occurred approximately a month before the Deagon and James murders and involved a thirteen-year-old victim. Charges were never filed against anyone in connection with this allegation.

¶ 39 Following the presentation of its case during the second stage of trial, the State moved to incorporate all first-stage evidence into the penalty phase and rested its case in aggravation. Thereafter, the jurors were briefly excused from the courtroom and defense counsel made the following announcement on the record:

> I would announce to the Court that we have one witness we intend to call, Mr. Noland, who has previously testified. I'd announce to the Court we have two other witnesses available to testify in mitigation, that being the defendant's mother, who would testify about his childhood and normal upbringing, and Mr. Donny Railey (sic), the juvenile officer at Marshall County, who would testify that the defendant had no prior contacts with the juvenile system. At my client's instructions, however, I'm not gonna call either one of these witnesses.

As announced Tilley's sole witness in the penalty phase of trial was Sheriff Bill Noland. Noland simply testified that Tilley had readily admitted committing both the James and Deagon murders, but denied any involvement in the alleged rape.

¶ 40 In his ninth assignment of error, Tilley now contends his death sentence must be vacated as the record is devoid of any record demonstrating he expressly, knowingly, intelligently and voluntarily waived his right to present mitigating evidence. We agree.

¶ 41 The Eighth Amendment does not require mitigating evidence be presented on a defendant's behalf in the sentencing stage of a capital trial, only that the defendant be given the opportunity to present such evidence. *Wallace v. State,* 1995 OK CR 19, 893 P.2d 504, 512, *cert. denied,* 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160. However, in *Wallace,* 893 P.2d at 512–13, this Court established the following guidelines to assist trial courts when dealing with a defendant in a capital case who refuses to allow the presentation of mitigating evidence during their sentencing hearing:

> [T]he court must ensure the defendant has an understanding of his or her rights both in the plea process and in the sentencing process:
>
> (1) The court must inform the defendant of the right to present mitigating evidence, and what mitigating evidence is.
>
> (2) The court must inquire both of the defendant and his attorney (if not pro se) whether he or she understands these rights.
>
> (3) The court should also inquire of the attorney if he or she has attempted to determine from the defendant whether there exists any evidence which could be used to mitigate the aggravating circumstances proven beyond a reasonable doubt by the prosecution.
>
> (4) If such information has been given, the attorney must advise the court what that mitigating evidence is; if the defendant has refused to cooperate, the attorney must relate that to the court.
>
> (5) The trial court must inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and the effect of failing to present that evidence.
>
> (6) After being assured the defendant understands these concepts, the court must

inquire of the defendant whether he or she desires to waive the right to present such mitigating evidence.

(7) Finally, the court should make findings of fact pursuant to *Grasso* [*v. State,* 857 P.2d 802 (1993)] of the defendant's understanding and waiver of rights.

By using these guidelines, the Court concluded that trial courts could provide valuable information and help preserve the record for mandatory sentence review on appeal.[10] *Wallace,* 893 P.2d at 513.

¶ 42 The State contends the *Wallace* guidelines are not applicable to this case as Tilley did present one witness in mitigation. Sheriff Noland's brief testimony did not contain mitigating evidence. Noland simply testified that Tilley freely admitted committing the murders, but denied committing the alleged rape. This evidence was offered to rebut the rape allegation and cannot be construed as mitigating in nature. Nor did the trial court or defense counsel consider this evidence mitigating in nature. Defense counsel did not argue mitigating evidence during his closing argument. Furthermore, although required by OUJI–CR 439, the trial court did not list any mitigating factors in the sentencing phase jury instructions.

¶ 43 The guidelines established in *Wallace* are clearly applicable to this case.[11] Unfortunately, in light of the extremely sparse record of Tilley's waiver, this Court is unable to determine whether the trial court substantially complied with the *Wallace* guidelines.[12] Thus, Tilley's death sentence cannot stand and this matter must be remanded to the district court for resentencing. Trial courts and attorneys are cautioned to make a complete record when this type of circumstance arises.

¶ 44 In his tenth assignment of error, Tilley asks this Court to reconsider its decision that the Eighth Amendment does not require mitigating evidence be presented on a defendant's behalf. *Wallace,* 893 P.2d at 511–12. We are not persuaded by Tilley's

argument. This issue need not be addressed again at this time.

¶ 45 The remainder of Tilley's allegations of error which specifically attack the propriety of his death sentence are rendered moot and need not be addressed.

### Sufficiency of the Appeal Record

¶ 46 Tilley contends in his seventh allegation of error that he was denied a fair opportunity to appeal his conviction because many portions of the transcript are inadequate and incomplete. During trial, the court reporter failed to record and transcribe numerous bench conferences that were held outside the hearing of the jury. Additionally, during first stage deliberations, the jury requested that specific portions of Dr. Choi's testimony be read back to them. At the time this testimony was read back to the jury a notation appears in the transcript stating: "Whereupon this court reporter read back portions of the testimony of Dr. Choi as requested by the jury."

¶ 47 While a complete stenographic record should be taken in all capital cases, *Van White v. State,* 1988 OK CR 47, 752 P.2d 814, 821, failure to transcribe portions of a capital case is not *per se* reversible error. *See Parker v. State,* 1994 OK CR 56, 887 P.2d 290, 294. Again, this Court strongly recommends that all portions of the trial be transcribed; this would include bench conferences (side bars) and conferences in Chambers. In the present case, Tilley does not allege or demonstrate any error occurred during one of the bench conferences or during the time Dr. Choi's testimony was read back to the jury. *See Parker,* 887 P.2d at 294–95. Moreover, due to error found in the sentencing stage, the mandatory sentence review required by 21 O.S.1991, § 701.13 need not be conducted in this case. Therefore, this proposition of error fails.

### Ineffective Assistance of Trial Counsel

¶ 48 Tilley asserts in his thirteenth assignment of error that he was denied effec-

---

10. The guidelines established in *Wallace* are to also be used in guilty/nolo contendere pleas.

11. It should be noted that the *Wallace* decision was handed down more than a year before Tilley's trial was conducted.

12. Substantial compliance with the procedure was determined to be sufficient in Wallace's case.

tive assistance of counsel in violation of the Sixth, Eighth and Fourteenth Amendments. Tilley contends that deficiencies in trial counsel's performance resulted in unreliable verdicts at both stages of his capital trial. We need only address Tilley's first stage claims of ineffective counsel.

¶ 49 Tilley maintains trial counsel was ineffective for failing to insure a complete and adequate record for appeal and for failing to object to instances of prosecutorial misconduct. For an ineffective assistance of counsel claim to be valid a defendant "must show (1) counsel's representation fell below an objective standard of reasonableness and (2) the reasonable probability that, but for counsel's errors, the results of the proceedings would have been different." *Boyd v. State,* 1996 OK CR 12, 915 P.2d 922, 925, *cert. denied,* — U.S. —, 117 S.Ct. 207, 136 L.Ed.2d 142; *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons discussed in the seventh and eighth propositions of error, Tilley has failed to show that trial counsel's performance was deficient and that his deficient performance prejudiced the defense during the first stage of trial. This assignment of error fails.

¶ 50 Pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1995), Tilley further requests that this matter be remanded to the district court for an evidentiary hearing on his Sixth Amendment claim of ineffective assistance of counsel. *See* Application for Evidentiary Hearing on Sixth Amendment Claim, filed May 7, 1997. Tilley's application for an evidentiary hearing is entirely based on trial counsel's alleged failure to adequately investigate and present second-stage mitigation evidence that was available. As this case is being remanded for resentencing, Tilley's application for an evidentiary hearing need not be addressed and is denied.

### Cumulative Error Review

¶ 51 In his final proposition of error, Appellant contends the accumulation of errors deprived him of a fair trial. No error oc-

curred in the guilt/innocence stage of trial which requires reversal of Tilley's conviction. With regard to the penalty stage of trial, this allegation of error need not be addressed as this Court grants relief.

### Conclusion

¶ 52 Tilley's conviction for First Degree Malice Aforethought Murder is **AFFIRMED**, but his sentence of death is **VACATED** and this matter is **REMANDED** to the district court for resentencing.

CHAPEL, P.J., and STRUBHAR, V.P.J., concur.

LUMPKIN and LANE, JJ., concur in results.

LANE, Judge, concurs in results:

¶ 1 I agree with the opinion of the majority when it concludes that the phrase "with premeditated design" is the equivalent of "malice aforethought," and therefore, its usage does not vitiate the Information. Coming to this conclusion, I would find the Information sufficient and that the use of the *"Parker"*[1] doctrine is unnecessary.

---

1. *Parker v. State,* 1996 OK CR 19, 917 P.2d 980, *cert. denied,* — U.S. —, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997).